# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| THE GUARANTEE COMPANY OF NORTH AMERICA USA, | Case No.: 2:13-cv-2266-PMD |
| Plaintiff, | **COMPLAINT** |
| v. | |
| METRO CONTRACTING, INC., AUDREY GRIEBE, AND STEPHEN GRIEBE, | |
| Defendants. | |

The Plaintiff, The Guarantee Company of North America USA ("Guarantee"), and, complaining of the Defendants, Metro Contracting, Inc., Audrey Griebe, and Stephen Griebe ("Indemnitors") would respectfully show unto this honorable court the following.

## PARTIES

1. Guarantee is a Michigan corporation with its principal place of business located in Southfield, Michigan.

2. Metro Contracting, Inc. ("Metro") is a South Carolina corporation with its principal place of business located in Columbia, South Carolina.

3. Stephen Griebe is individual residing in Berkeley County, South Carolina.

4. Audrey Griebe is an individual residing in Berkeley County, South Carolina.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because it involves a dispute between citizens of different states and an amount in controversy greater than $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

7. Guarantee executed, as surety, various performance and payment bonds on behalf of Metro, for various construction projects to be performed in the State of South Carolina.

8. To induce Guarantee to execute the bonds for Metro, the Griebes, individually, and Stephen Griebe, on behalf of Metro, all as Indemnitors, executed a General Agreement of Indemnity ("GAI") on or about August 26, 2008.  A copy of the GAI is attached as **Exhibit A.**

9. By the terms of the GAI, the Indemnitors assumed the obligations of Metro, as principal, under the Bond.

10. Under the GAI, the Indemnitors agreed to the following provisions:

    A. That the Indemnitors will hold Guarantee harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature which Guarantee may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by recovering any salvage or enforcing this Agreement.  In the event Guarantee advances funds for the benefit of any Contractor in connection with work subject to a BOND or BONDS such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the Contractor.

    B. Upon Guarantee's reasonable belief that it may incur a loss on a BOND or BONDS, Guarantee may demand, and upon Guarantee's demand, the

Undersigned shall deliver over to Guarantee collateral security acceptable to Guarantee to cover any contingent losses and any subsequent increase thereof.

C. All payments received for or on account of a BONDED CONTRACT, and all monies due and to become due under any such contract or contracts, whether in the possession of the CONTRACTOR or otherwise, are trust funds for the benefit and payment of all persons to whom the CONTRACTOR incurs obligations in the performance of such contract or contracts for which Guarantee would be liable under any BOND or BONDS. If Guarantee discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

D. The Undersigned grants Guarantee a security interest in, and acknowledge and agree that Guarantee has, and shall continue to have, a continuing security interest in any and all of the Undersigned's: Receivables, inventory, equipment, records, accessions and additions, proceeds and products, and subcontracts.

E. Without Guarantee's prior written consent the Undersigned shall not sell, assign or otherwise dispose of any of the assets of their respective businesses except in the ordinary course of business.

F. In addition to the security interest granted hereunder, the Undersigned hereby assign, transfer, and convey to Guarantee all of the rights and property that constitute the Collateral. The assignment is for the purpose of enabling Guarantee to take immediate possession of and to use any Collateral upon the happening of an Event of Default, to complete the performance of the obligations of the Undersigned under a Bonded Contract and to make payment of obligations incurred by the Undersigned in the performance of a Bonded Contract. The

assignment is an absolute assignment of Collateral relating to each Bonded Contract and no further notice or other action by Guarantee is required.

11. The GAI further provides that the following constitute events of default:

   A. The Undersigned shall breach any terms of the GAI;

   B. A receiver, liquator, custodian or trustee of the Undersigned, or of all or any of the property of the Undersigned, is appointed by court order and such order remains in effect for more than 30 days, or an order for relief is entered with respect to the Undersigned or the Undersigned is adjudicated bankrupt or insolvent, or any of the property of the Undersigned is sequestered by court order and such order remains in effect for more than 30 days;

   C. Any change or threat of change in the character, identity, control, beneficial ownership or existence of Contractor; or

   D. A payment by Guarantee on any Bond.

12. Under the GAI, upon the happening of any Event of Default, Guarantee may:

   A. Exercise in respect to the Collateral, all the rights and remedies of a secured party on default under the Uniform Commercial Code, and may sell the Collateral at public or private sale, and apply proceeds against its losses.

   B. Execute in the name of the Contractor any agreements deemed necessary or desirable by Guarantee to provide absolute title to Guarantee of any funds, property, and rights as are hereby assigned, transferred or conveyed, and the Contractor hereby authorizes Guarantee, or such person or persons designated by Guarantee to take immediate possession of such funds, property, and rights, to collect such sums as may be due to the Contractor and to endorse, in the name of

4

    the Contractor, and to collect any checks, drafts, warrants and other agreements made and issued in payment of any such funds. Guarantee is authorized to assert and prosecute any right or claim hereby assigned.

13. Guarantee has received demands from subcontractors for payment on Bonded Contracts amounting to over $1,043,000.00. Because of Metro's and the Indemnitors' default under the GAI, Guarantee has paid out to its construction consultants on the Latta project the amount of $20,466.47 and has incurred attorney's fees and expenses in investigating and defending lawsuits brought by bond claimants in the amount of $16,590.60.

14. Metro has admitted that amounts are due to subcontractors on Bonded Contracts of over $1,184,925.00.

15. Guarantee has hired a third party consultant to perform an audit of Metro's accounts on bonded contracts and has identified a likely loss to Guarantee in the amount of over $3 million.

16. Based on these facts, Guarantee made a demand for delivery of collateral for the expense incurred and anticipated loss on June 25, 2013.

17. Indemnitor Audrey Griebe has responded to the demand for collateral but has not offered to post any collateral.

18. Indemnitors Metro and Stephen Griebe have represented that they are not capable of delivering the requested collateral.

19. The audit performed by Guarantee's consultant on June 20, 2013 indicates that Metro has insufficient assets to satisfy Guarantee's demand for collateral.

20. All of the Indemnitors have defaulted under the terms of the General Agreement of Indemnity.

21. Mr. Griebe improperly and in violation of South Carolina law diverted funds from Bonded Projects, which funds constituted trust funds held for the benefit of subcontractors. Mr. Griebe took Bonded Contract funds and used them to pay criminal fines which he incurred, in the amount of $500,000.00.

22. The sum of over $275,000 in cash is being held in trust by order of the Family Court of Charleston County. The funds being held in trust are being held in the accounts of Audrey Griebe's various attorneys and accounts held by Audrey Griebe herself. These funds were obtained by Mrs. Griebe in an improper sale of assets paid for by Metro and held by Mrs. Griebe. At the time the assets were sold, Mrs. Griebe was aware that Metro was insolvent and, upon information and belief, was aware that Mr. Griebe was diverting funds from Bonded Projects to pay criminal fines he had incurred.

23. The funds being held in trust as described above are assets of the indemnitors to which the surety is entitled to seize as collateral for its current and future expected losses.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

24. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

25. Guarantee has performed all the terms and conditions on its part to be performed with respect to the GAI.

26. The Indemnitors have breached the Indemnity Agreement in that despite demand by Guarantee for performance by the Indemnitors, said Indemnitors have failed, neglected, and refused to pay Guarantee for losses incurred under the Bonds. The Indemnitors have also breached the GAI by failing to provide collateral as demanded by Guarantee.

27. As a direct and proximate result of the Indemnitors' breach of contract, Guarantee has suffered damages, including expenses and attorneys fees, in a sum in excess of $712,057.07.

## SECOND CLAIM FOR RELIEF
(Specific Performance)

28. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

29. The Indemnity Agreement is the proper subject of and is sufficiently definite and certain on its face for specific performance.

30. The consideration flowing from Guarantee to the Indemnitors under said Indemnity Agreement was adequate and the terms and conditions of said Indemnity Agreement are just and reasonable.

31. Guarantee has performed all the terms and conditions on its part to be performed with respect to said Indemnity Agreement.

32. Pursuant to terms and conditions of Paragraphs 3 and 7 of the Indemnity Agreement, the Indemnitors are obligated to furnish money as requested by Guarantee to pay any costs, expenses, or demands arising from the underlying construction projects or under the Bonds issued on behalf of JGC. Guarantee has made demand upon the Indemnitors for posting of said collateral and each of them has failed, neglected, and refused to furnish such moneys. A true and correct copy of said demand is attached hereto as Exhibit "C."

33. The Indemnitors have breached the Indemnity Agreement by failing and refusing to (1) complete work on the Project; (2) indemnify and hold Guarantee harmless against loss, expenses, attorney's fees and liabilities incurred by Guarantee by reason of executing the Bonds; (3) provide money or collateral sufficient to cover any liability, judgment and/or

7

expense related to the Bonds issued by Guarantee; (4) reimburse Guarantee for all damage, loss, exposure to judgment or expense of any nature which Guarantee may incur; (5) otherwise comply with the terms of the Indemnity Agreement and to perform their obligations to Guarantee thereunder in connection with Guarantee's defense and payment of the claims asserted against the Bonds which it issued on behalf of JGC.

34. Guarantee is therefore entitled, pursuant to the terms and provisions of the Indemnity Agreement, to an order from this Court compelling the Indemnitors to post collateral acceptable to Guarantee in an amount to be determined, and otherwise pay to Guarantee all sums due under the Indemnity Agreement, for which it hereby sues.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief)

35. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

36. Upon information and belief, the Indemnitors have been, and continue to be, diposing of assets such as real property to avoid payment to Guarantee under the Indemnity Agreement.

37. The disposal of such assets constitutes a breach of the Indemnity Agreement and contravenes South Carolina law as set forth herein.

38. Should the assets of the Indemnitors be disposed of prior to judgment in this case, Guarantee will have no adequate remedy at law in that an award of damages will not be of any consequence if the Indemnitors have disposed of the assets covered by the Indemnity Agreement.

39. Guarantee will suffer immediate substantial and irreparable harm unless injunctive relief is granted, in that it will be forced to pay payment bond claims and finish performance of

Metro's Bonded Contracts without any participation from the Indemnitors and without any recourse against the assets of the Indemnitors.

40. Accordingly, Guarantee hereby requests a Temporary Injunction enjoining all of the Indemnitors from disposing of any assets, including the sums currently held in trust under the Family Court Order, during the pendency of this lawsuit and until all obligations of the Indemnitors under the Indemnity Agreement have been satisfied.

## **FOURTH CLAIM FOR RELIEF**
**(Fraudulent Conveyances)**

41. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

42. The conveyances and transfers by and between the Indemnitors set forth above were voluntary (without reasonably fair consideration) and (a) were made with the actual intent to defraud creditors or (b) the grantors did not retain sufficient property to pay existing debts or (c) were made with the intent of assisting the Indemnitors in defrauding their creditors and, therefore, those conveyances and transfers are void.

43. Alternatively and upon information and belief, these conveyances and transfers were made for inadequate consideration and were made by the grantors with the actual intent to defraud creditors and the grantees either participated in the intent to defraud creditors or had notice of the intent to defraud creditors and, therefore, these conveyances and transfers are void.

44. Plaintiff is entitled to have the transfers and conveyances declared void and set aside and to have the assets paid and transferred to Plaintiff by the Indemnitors, including, but not limited to, the cash held in trust as described above.

## FIFTH CLAIM FOR RELIEF
### (Fraud)

45. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

46. Upon information and belief, the Indemnitors have been engaged in systematic efforts, acts, and schemes to transfer their assets to avoid satisfaction of their obligations and to prevent their assets from being available to satisfy any judgment obtained by Guarantee. Those efforts, acts, and schemes include various transfers and encumbrances that include, but are not limited to, the transfers set forth above.

47. The efforts, acts, and schemes of the Indemnitors as described above constitute false representations and concealments of material facts.

48. These representations were false and material, and the Indemnitors knew the representations were false. The Indemnitors intended that Guarantee act upon their misrepresentations, to wit: continue to Guarantee's detriment.

49. Guarantee was unaware of the falsity of the Indemnitors' representations, and justifiably relied upon them and had a right to rely on them. Guarantee has been consequently and proximately injured.

50. As a direct and proximate result of the Indemnitors' fraudulent acts, Guarantee has suffered and continues to suffer damages in an amount in excess of $712,057.07, together with punitive damages in an amount to be determined by the jury.

## SIXTH CLAIM FOR RELIEF
### (Prejudgment Attachment)

51. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

52. As set forth above, Guarantee is informed and believes that all of the Indemnitors have assigned and disposed of property and cash with the intent to defraud their creditors. Accordingly, Guarantee seeks to have the cash being held in trust as described above, together with all real property assets of the Indemnitors, attached as security for the satisfaction of such judgment as Guarantee may recover against the Indemnitors, pursuant to S.C. Code Ann. § 15-19-10 et seq.

## SEVENTH CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices)

53. Guarantee realleges and incorporates herein by reference each and every allegation set forth in the paragraphs above to the extent consistent herewith.

54. The actions of the Indemnitors as described above constitute deceptive acts or practices in the conduct of trade or commerce which have an adverse impact on the public interest.

55. The Indemnitors' deceptive acts and practices are capable of repetition in that Indemnitor Metro continues to be actively engaged in business in the State of South Carolina.

56. These unfair and deceptive acts constitute a violation of the South Carolina Unfair Trade Practices Act, S.C. Code §39-5-10, *et seq*.

57. As a direct and proximate result of the Indemnitors' unfair and deceptive acts and practices, Guarantee has suffered actual and consequential damages in an amount in excess of $712,057.07.

58. The Indemnitors' deceptive acts and practices constitute a willful or knowing violation of S.C. Code Ann. § 39-5-10, *et seq*.

59. Guarantee is therefore entitled to three times its actual damages, plus interest, costs, and attorney's fees, for which it hereby sues.

WHEREFORE, the Plaintiffs pray the Court for:

1. An Order setting aside the transfers and conveyances described above and directing the payment and transfer of the assets to Plaintiffs;

2. An Order for injunctive relief, prohibiting the Indemnitors from transferring or using any assets until the rights to those assets are determined by this Court;

3. An Order awarding Guarantee compensatory and punitive damages as requested above;

4. An Order awarding Guarantee treble damages as requested above;

5. An Order granting such other and further relief as the Court deems appropriate.

ELMORE GOLDSMITH, PA

By:   /s/Kimila L. Wooten
Kimila L. Wooten (I.D. No. 5525)
Elmore Goldsmith, PA
55 Beattie Place, Suite 1050 (29601)
Post Office Box 1887
Greenville, South Carolina  29602
(864) 255-9500 (Telephone)
(864) 255-9505 (Facsimile)
*Counsel for Plaintiff, The Guarantee Company of North America USA*

August 21, 2013
Greenville, South Carolina